1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2

3   TIKTOK, et al,
                                        CV Action
4           Plaintiffs,                 No. 1:20-2658

5       vs.                             Washington, DC
                                        September 24, 2020
6   DONALD TRUMP, et al,
                                        10:00 a.m
7           Defendants.
    _____/
8

9            TRANSCRIPT OF SCHEDULING HEARING
          BEFORE THE HONORABLE CARL J. NICHOLS
10             UNITED STATES DISTRICT JUDGE

11
    APPEARANCES:
12  For the Plaintiff:    JOHN E. HALL
                          ALEXANDER BERENGAUT
13                        BETH BRINKMANN
                          MEGAN CROWLEY
14                        MEGAN KEENAN
                           COVINGTON & BURLING, LLP
15                         One City Center
                           850 Tenth Street NW
16                         Washington, DC 20001-4956
                           (202)662-5104
17

18  For the Defendant:    DANIEL SCHWEI
                          U.S. DEPARTMENT OF JUSTICE
19                        P.O. Box 883
                          Washington, DC 20044
20                        (202)616-8470

21

22  Reported By:    LORRAINE T. HERMAN, RPR, CRC
                    Official Court Reporter
23                  U.S. District & Bankruptcy Courts
                    333 Constitution Avenue, NW
24                  Room 6710
                    Washington, DC 20001
25                  (202)354-3196

1                    **P R O C E E D I N G S**

2              THE COURT:  Good morning.  This is Judge Nichols.

3        Ms. Lesley, could you please call this matter?

4              CLERK:  Good morning, Your Honor.  Yes, sir.

5              This is Civil case year 2020-2658, TikTok,

6        Incorporated, et al versus Donald J Trump, et al.

7              Counsel, please introduce yourselves for the

8        record, beginning with the Plaintiff.

9              MR. HALL:  Good morning, Your Honor.  This is John

10       Hall with Covington & Burling for the Plaintiffs.

11             THE COURT:  Good morning, Mr. Hall.

12             MR. HALL:  I am joined by several of my colleagues

13       from Covington, Your Honor, who are also on the call.

14             THE COURT:  Mr. Hall, will you be taking the lead

15       for Plaintiffs this morning?

16             MR. HALL:  Yes, I will.

17             THE COURT:  Given that we are doing this by phone,

18       why don't we just keep the introductions to you.  Obviously,

19       if someone on behalf of Plaintiff other than you needs to

20       speak, I would ask that person to introduce himself or

21       herself at that time, but I think we are set for now.

22             On the Government's side, who do we have on the

23       line and who will be taking the lead?

24             MR. SCHWEI:  Good morning, Your Honor, this is

25       Daniel Schwei from the Department of Justice on behalf of

1    the United States.  I will be taking the lead.  Joining me

2    on the call is a colleague from the Department of Commerce,

3    just to listen in, but I will be taking the lead.

4            THE COURT:  Thank you, Mr. Schwei.

5            Is anyone else on the line representing a party

6    who will be taking a speaking role?  It sounds like the

7    answer to that is, no, but before we begin, I just wanted to

8    see if there is anyone who is likely to be speaking who has

9    not introduced him or herself.

10            [No response]

11            Okay.

12            MR. HALL:  I don't believe so, Your Honor.  Not

13    from our side.

14            THE COURT:  Thank you, Mr. Hall.  Mr. Schwei, also

15    the same for you.  Correct?

16            MR. SCHWEI:  Correct, Your Honor.

17            THE COURT:  I have reviewed the parties positions

18    with respect to the briefing schedule, and I want to start

19    with you, Mr. Schwei.  Obviously, I read your paper, but it

20    seems to me that you've conceded that as of Sunday night, if

21    nothing were to change between now and then, then new users

22    in the United States would be foreclosed from downloading

23    the TikTok app and as a result, TikTok would be foreclosed

24    from getting new users in the United States and also some

25    other things would go into effect, including the inability

1    of TikTok to update the app.  In light of that, why is it at

2    all penible for me to let that date just come and go while

3    briefing continues?

4            It seems to me that either I need to have briefing

5    and a decision before that date, if that date remains, or

6    allow your briefing schedule to apply here but only if the

7    Government agrees to put that date off.

8            How can I allow that date to come and go while

9    briefing is ongoing and without at least deciding whether an

10   injunction as to Paragraph 1 of Commerce's order is

11   appropriate?

12           MR. SCHWEI:  Your Honor, I think a couple

13   responses.  One is, I think, in some respects the premise of

14   that question inverts the order of it by asking why not

15   enjoin and let a briefing schedule to occur when the

16   standard is clear that it's the Plaintiff's burden to

17   demonstrate the need for in the extraordinary remedy of a

18   TRO or preliminary injunction.  So I don't think there

19   should be a presumption in favor of the injunction.

20           Just to answer the question more directly, I think

21   there are two reasons why any relief prior to Sunday night

22   is not necessary.  One, is just that the Plaintiffs here

23   have delayed themselves in requesting that relief and they

24   filed a lawsuit in a different court a month ago and filed

25   their motion seeking this purportedly emergency relief only

1    yesterday.

2         And their brief is robust, it's substantive, it

3    puts forth a number of different claims, it's supported by a

4    voluminous factual materials, and I think it is only fair

5    that particularly in this context of national security and

6    foreign affairs that the Government be afforded a reasonable

7    opportunity to respond to that filing.

8         So any timing constraint I think have been

9    dictated by the Plaintiff's own litigation decision.  So

10   there is a procedural reason there, and I think it is

11   well-established in this district that the Plaintiff's own

12   delay in seeking emergency relief is itself a reason for not

13   granting that relief, but we are not even at that point yet.

14   We are just talking about scheduling and a citation to

15   support what I just said is a decision from Judge Walton,

16   Davis versus Billington, 76 F. Supp 3d, 59 and in footnote

17   11 Judge Walton cites a number of authority supporting the

18   idea that Plaintiff delay in seeking relief is a valid

19   ground for denying relief itself.  But setting aside the

20   procedural point, more substantively, if one thinks of a TRO

21   or a preliminary injunction as generally preserving the

22   status quo allowing a lawsuit to proceed and more wholesome

23   consideration of the issues, that is what Paragraph 1 does

24   by saying TikTok is allowed to continue operating with

25   respect to its existing users but cannot add new users.  And

1    the reason for that is because there are significant

2    national security risks associated with new users continuing

3    to sign up for the application and having their sensitive

4    personal information made vulnerable to potential access by

5    the Chinese government.

6            And so, even taking Plaintiff's own allegations,

7    it's on the order of something like 400,000 U.S. users per

8    day whose information could be put at risk.  So the

9    Secretary essentially said, Let's sort of balance those by

10   freezing the status quo with respect to the existing users

11   who can continue using the application, but we are not going

12   to allow new users to expand the universe of individuals

13   whose data is at risk.

14           I think, effectively, by allowing prohibition 1 to

15   go into effect, that is preserving the status quo with

16   respect to the existing users and the existing application

17   while also taking into account the Government's serious

18   national security concerns; and that is the factual context

19   in which it would be appropriate for this litigation to

20   unfold.  I don't think there is a need for irreparable harm

21   associated with just the pool of new users.

22           THE COURT:  You just mentioned that the Secretary

23   had, I guess, articulated a basis for -- let's put it this

24   way -- distinguishing between new users joining the platform

25   and existing users.  Where could I find the Secretary's

1          finding or statement that you are alluding to?

2                    MR. SCHWEI:  Your Honor, I think that that is

3          exactly why we should allow these claims to be litigated on

4          a more normal time frame because typically the place where

5          you would find that is in the Administrative Record or

6          whatever other factual material that the Government would

7          submit in defense of its action.

8                    Here we haven't had the opportunity to do that

9          and, you know, we are eager to defend this order, and we are

10         happy to do so on an expedited basis, but something

11         resembling the time frame the Plaintiffs proposed is just

12         not tenable for allowing the Government to submit the full

13         factual defense that would normally be appropriate in some

14         respect necessary for this Court to give a full

15         consideration to these important issues.

16                   THE COURT:  Mr. Schwei, to be very clear, I think

17         it is implicit in everything you said, but I just want to

18         make sure that I understand it.  The Government is, I take

19         it, unwilling to delay the effective date of provision 1 of

20         the Commerce order for some additional, although relatively

21         limited, period of time to enable that briefing to occur.

22         Correct?

23                   MR. SCHWEI:  As of right now, my understanding is

24         that is correct.  I will note just for, you know, purposes

25         of completeness, the Secretary did already delay prohibition

1 for a week related to some positive developments that had

occurred in separate but sort of parallel negotiations

relating to restructuring of TikTok and its Chinese parent

company.  I don't want to say that it is impossible to

happen, because I can't predict what those corporate

negotiations might unfold, but on this call as of right now,

I cannot submit to the Government voluntarily postponing the

effective date.

     And I think, respectfully, Your Honor, there is

good reason for that with the identified national security

risks and concerns that have been identified but also, if

the Government were to voluntarily delay every effective

date once a Plaintiff files a motion for emergency relief,

that would only further encourage Plaintiffs to wait until

the last minute to file their requests.

     THE COURT:  Thank you, Mr. Schwei.

     Mr. Hall, you've obviously heard the Government's

position.  Why did TikTok wait essentially a month before

filing its motion when it knew that the effective date of

Paragraph 1 -- well, first of all, the President's

proclamation has known of it since August 6th and has had, I

assume, some awareness of prohibitions going into effect and

in fact, filed a lawsuit a month ago in the Central District

of California.  A considerable period of time, it seems to

me did pass where some of these issues, at least, could have

1    been -- [Inaudible due to phone beeping]

2            Why did TikTok wait and why isn't that reason to

3    adopt something more along the lines of what the Government

4    is proposing here?

5            MR. HALL:  Thank you, Your Honor.  Jon Hall again

6    for Covington, for the Plaintiffs.

7            We tried to do everything we could to let the

8    Government know exactly what was coming.  It's correct that

9    this dispute originates with the President's Executive Order

10   that was issued back on August 6th, but that order didn't

11   itself identify what was going to be prohibited.  For that

12   you had to wait, given the way it was structured, 45 days

13   until the Commerce Department identified what the prohibited

14   transactions were.

15           We certainly felt that that order was unlawful at

16   the time it was issued, but we also knew that if we moved

17   for a preliminary injunction before Commerce issued the

18   regs, then the Government would say our motion was

19   premature.

20           Indeed, Your Honor, that is exactly the argument

21   the Government has made in other cases related to this.  So

22   here is what we did, we wanted to make sure that the

23   Government knew we intended to challenge this order after

24   the regs came out.  And to make that clear, back in August,

25   a month ago, we filed this lawsuit in the Central District

1    of California, which is where our clients have their U.S.

2    offices, laying out for the Government our legal theories

3    and telling them exactly what we intend to do.

4         In the paper they filed yesterday and again here

5    today they make it sound like it is evidence of delay.  Far

6    from it.  The point of that suit was to give the Government

7    notice of exactly what was coming; that was the sole purpose

8    of that complaint.  We described in it why we believed the

9    order was unlawful, laid out our legal theories.  We said in

10   that complaint after the regulations issues we would amend

11   our complaint to address the specifics of the regs including

12   adding new claims under the Administrative Procedure Act and

13   move for a preliminary injunction.  This motion that was

14   filed yesterday isn't a surprise to them.  They've known for

15   a month exactly what was coming.

16        Your Honor, we brought this motion just as

17   promptly as we could.  The regulations were issued last

18   Friday.  Just as we promised, we immediately filed our

19   amended complaint.  We did it here in the District of

20   Columbia for reasons I can describe if it matters.  We

21   served a courtesy copy of that amended complaint on these

22   same Government lawyers last Friday night.  We didn't

23   immediately move for a preliminary injunction and there was

24   good reason for that as the Government has said and has been

25   publicly reported there were discussions in trying to come

1    up with a commercial solution here that would satisfy the

2    Government and avoid the need for litigation as with Oracle

3    and Walmart that's been reported in the press.

4        The President announced Saturday that he had

5    approved such a deal.  Commerce withdrew the Friday

6    regulations.  They withdrew them.  Then early in the week

7    resolution seems to have come apart.  And on Tuesday, the

8    day before we filed the motion, Commerce reissues the

9    prohibitions, including the Sunday night deadline for the

10    App Store ban.  Before that happened, we didn't have

11    anything to move against.  Once we did, we filed the

12    preliminary injunction the very next day.

13        Judge, there was no delay here at all, certainly

14    not by us.  We did everything -- given the way the order was

15    structured and the process that was put in place, we did

16    absolutely everything we could to tell the Government

17    exactly what was going to happen and when it was going to

18    happen.

19        THE COURT:  Mr. Hall, if I agree that I should

20    have briefing occur and make a decision on your motion on or

21    before Sunday at 11:59 p.m., am I right that it could be

22    limited or the question about injunction or injunctive

23    relief could be limited to the September 27 prohibition; and

24    that litigation regarding a possible preliminary injunction

25    as to the rest of the Commerce order could occur on a

1    somewhat more leisurely pace?

2         MR. HALL:  Judge, we would urge you not to do

3    that.  My clients are facing irrepairable harm, not just

4    from the impending App Store ban from Sunday night, but from

5    the rest of these prohibitions that will go into effect

6    November the 12th.  They're feeling the hurt and the pain

7    and the irreparable harm from all of that right now.

8         It's true that the urgency of this is created by,

9    you know, the Sunday night ban.  We've talked about that.

10   It doesn't really make any -- that part of it makes

11   absolutely no sense to us, and I didn't hear from Government

12   counsel, really, an explanation for why it was done that

13   way.  I mean, it seems extensible justification for the

14   order is to protect the data of American users of TikTok;

15   but, if anything, that App Store prohibition, as has been

16   suggested already in the comments that have been made by the

17   Court, will prevent users from receiving their regular

18   security update.  So, if anything, it undermines data

19   security.

20        There really is no apparent justification for this

21   two-phase implementation other than it seems to us,

22   candidly, to inflict some pain on the business now that risk

23   irritating the users until after the election is over.

24        But all of these prohibitions, which of course

25   were -- that are contained in the Commerce Department

1    regulations are causing significant harm to the business.  I

2    mean, it is apparent to the world now if nothing is done,

3    this app is going to be shut down completely as of November

4    the 12th.  That is affecting the company's goodwill and

5    reputation both with users, who are considering moving to

6    other less attractive platforms.  And we know in the social

7    media business, new users, retaining users, is absolutely

8    the lifeblood of the business.  It is affecting

9    relationships with their commercial partners and

10   advertisers, as I said, damaging the company's reputation

11   and goodwill.

12       Moreover, the legal arguments that we would

13   advance with respect to the App Store prohibition on Sunday

14   night are the very same legal arguments we will be advancing

15   with respect to the remainder of the prohibitions.  It is

16   just logical to consider everything together, and that is

17   what our papers do.

18       I would agree that perhaps some additional time

19   could be taken if we didn't have this Sunday night first

20   phase of it going into effect.  But given the way it is

21   structured, we think that the right way to do this is to

22   hear our injunction motion as to the entirety of the

23   regulations, to hear it on the schedule that we proposed

24   ahead of the first phase of this being implemented on Sunday

25   night.

1          THE COURT:  Thank you, Mr. Hall.  One more

2     question for you before I come back to the Government.

3          What is your understanding of the commercial deal

4     involving Oracle and Walmart and its potential effect of, I

5     guess, mooting out this case or of leading the Commerce

6     Department to withdraw the prohibition?

7          MR. HALL:  Judge, there is really no additional

8     insight that I can provide on that.  I am not a part of the

9     commercial deal team.  I am the litigator.

10          As of now it is my understanding, you know, there

11     is no commercial solution.  It seemed over the weekend that

12     everybody believed that there would be; that's apparently

13     the reason that, as I say, the Commerce Department withdrew

14     the prohibitions, but they reinstated them on Tuesday.

15          As of right now, at 11:59 p.m. on Sunday night,

16     the first phase of these prohibitions are going to go into

17     effect and all new users of this app are going to be

18     prohibited.  Two-thirds of the country that aren't currently

19     on the app are going to be barred from joining it, engaging

20     in protected speech six weeks before a national election;

21     that's what is coming.

22          If there is something to avert that, obviously,

23     Your Honor, you will be the first one to be notified because

24     we don't want you to be doing any work that you don't have

25     to be.  I am not excited either about having to litigate

1    this on the schedule that we proposed.

2         As I say, my clients didn't create this

3    arrangement, the deadline, the Government did; and that's

4    why we are asking you to enter the schedule that we

5    proposed.  It is really the only way for my clients to get

6    their day in court before facing irreparable harm.

7         THE COURT:  Thank you, Mr. Hall.

8         Mr. Schwei, just talking about the question of

9    when you think it could have been filed, it does seems to me

10   that until Commerce identified the set of prohibited

11   transactions, TikTok really couldn't have or shouldn't have

12   filed the motion for PI because it didn't know the actual

13   target that it was going to seek to enjoin, and then when

14   the first set was withdrawn, it made sense for TikTok to

15   wait because there were no prohibitions in place until the

16   new set was reinstated and they filed the next day, as I

17   understand it.

18        It seems to me that TikTok waited until it had a

19   clear set of prohibitions and then in light of the

20   commercial transaction, I guess, or for some other reason

21   when Commerce withdrew the prohibitions, it didn't make

22   sense for TikTok to file a motion for permanent injunction

23   then, and it did so only when the prohibitions were

24   reinstalled.

25        Why isn't it the case that TikTok essentially

1      acted as reasonably quickly as possible?

2                MR. SCHWEI:  A few responses, Your Honor.

3                One is that TikTok is not challenging only the

4      Commerce identification, they are also bringing claims

5      against and seeking to enjoin the Executive Order itself.

6      So, certainly, that Executive Order has been out there and

7      to the extent they think they have a valid legal claim for

8      enjoining the Executive Order itself, that could have been

9      brought well in advance of yesterday.

10               And I think even as to the Commerce restriction,

11     the fact that Plaintiffs now are seeking relief by Sunday

12     evening as to restrictions that go into effect November

13     12th, I think underscores why, you know, they could have

14     filed some semblance of a preliminary injunction motion a

15     month ago in connection with their first lawsuit that they

16     filed, which I respectfully find hard to believe that they

17     filed at a time if they thought there was inherently a

18     subject matter defect at the time that they filed it.

19               I think by their own argument, they are claiming

20     that these harms existed at the time they filed their first

21     lawsuit a month ago.

22               And with respect to the Commerce regulations, I

23     don't think the history recounted by my colleague is 100%

24     accurate because in terms of withdrawing and reinstating, I

25     suppose it is technically true with respect to federal

1    register publication notices, but what was clear throughout

2    and what was made clear on Saturday -- last Saturday

3    evening, in a statement from the Commerce Department is that

4    they weren't withdrawing the prohibitions entirely, they

5    were simply postponing the effective date for one week.

6              So the point about withdrawal and reinstatement on

7    Tuesday, that's really only just the circumstances and

8    contingencies associated with the federal register's

9    publication and public inspection desk, but what was clear

10    as a matter of substance was that the regulation hadn't

11    disappeared, they had just been postponed for one week.  So

12    I think that, you know, the regulation at a minimum were

13    available and known to Plaintiffs as of last Friday.

14              THE COURT:  Friday the 18th of September.

15    Correct?

16              MR. SCHWEI:  Correct.  That is when the Commerce

17    identification was made available.  So the Executive Order

18    was available long before then and the Commerce

19    identification was made available Friday morning the 18th.

20              Although there was some federal register back and

21    forth, just given the shifting implementation date, it was

22    always clear from the Commerce Department that the

23    transactions were simply being postponed for a matter of one

24    week.

25              THE COURT:  Thank you.

1          Do you have anything else you would like to

2     address that Mr. Hall noted in his argument?  And I would

3     add, if you have any additional information about the

4     commercial transaction and its potential effect on the

5     orders here, I would love to hear that.

6          MR. SCHWEI:  Your Honor, just on that last part, I

7     do not have any additional information.  I can't predict

8     what may happen or is happening in those negotiations.  As

9     of right now my understanding that the Paragraph 1

10    prohibition is scheduled to go into effect 11:59 p.m. on

11    Sunday evening.

12         Just in terms of addressing other items, the only

13    thing I would say is with respect to a question that Your

14    Honor asked, I think the only plausible basis for immediate

15    relief and forcing the Government to litigate on extremely

16    short timelines and for this Court to rule on this extremely

17    short timelines is that Paragraph 1 effective date.

18         Respectfully, I think it would be -- it would be

19    unfair to the Government for force it to defend a motion for

20    preliminary injunction as to the entirety of the challenged

21    Executive Order and Commerce restriction, when the majority

22    of them will not go into effect until six weeks from now and

23    provide the Government, you know, approximately 48 hours to

24    submit a complete defense and submit a complete record, when

25    the Plaintiffs have put forth a voluminous record, including

two apparent attempts at expert witness declarations.  I
think the Government must be given sufficient time to
respond.  So to the extent that there are any emergency
proceedings with rulings occurring before Sunday, I think
the only plausible basis for doing that is the Paragraph 1
prohibition.

The Plaintiffs are claiming harm now as a result
of a deadline six weeks from now, I think any of those harms
would not be redressable -- would not be redressed even if
this Court were to enter their requested relief because
independent -- uncertainty felt by independent third
parties, not before this Court, that perceived uncertainty
will not be redressed by a temporary time limited emergency
order from this Court.

So I don't think there is any plausible need for
litigating the complete merits prior to Sunday evening.

THE COURT:  Thank you.

It does seem to me if Paragraph 1 was not
operative until November 12 or had -- I think that is the
date -- but if it had the same operative date as the other
paragraphs of the Commerce's order, we would not need to
address the Commerce order on as expedited a basis as
Plaintiffs urge here.  We could take the matter up on a more
typical schedule and decide whether an injunction is
appropriate or not in advance of that date.

1          The problem, however, is that's not presently the

2    case, and we have an operative date for Paragraph 1 of

3    Sunday at 11:59 p.m.  And notwithstanding the Government's

4    arguments here, I don't think that that paragraph merely

5    preserves the status quo.  The status quo is that TikTok is

6    presently allowed to offer its app to U.S. users who can

7    sign up and use TikTok, and it looks like the parties are in

8    general agreement that that results in something like

9    400,000 new users per day.

10          The status quo is that -- and this apparently is

11    what happened today, tomorrow and Saturday -- is that

12    additional users will be joining the TikTok network through

13    and to include Sunday, and then as of Sunday night, that

14    must end.  So I do think that Paragraph 1, if it goes into

15    effect, does not merely preserve the status quo.  I

16    therefore think it is appropriate to move forward to

17    consider Paragraph 1 by or before its effective date.

18          So this is where I am.  And I think the choice is

19    the Government's.  If the Government, and if DOJ counsel in

20    consultation with its clients, agree to postpone the

21    effective date of Paragraph 1 to some date out in the

22    future, it may not be the same operative date as the rest of

23    the order, but whatever future date the Government might

24    agree to, then I would allow briefing and argument to occur

25    on a less expedited basis than Plaintiffs have proposed.

1    If, however, the Government is unwilling to do

2    that, then I would adopt the following schedule, which is

3    largely drawn from Plaintiff's proposal, which is that the

4    Government's response to Plaintiff's motion for PI would be

5    due tomorrow at 2:30; Plaintiff's reply brief would be due

6    at 2:30 on September 26th.  I would conduct a telephonic

7    hearing on or around 10:00 a.m. on September 27th all in an

8    effort to decide whether -- and I think this is important --

9    a preliminary injunction as to Paragraph 1 of the Commerce

10   order is appropriate.

11   I do think, for the reasons I said before and in

12   part for the reasons the Government explained, that really

13   the issue that creates the need for expedition is the

14   effective date of Paragraph 1, and it is that question that

15   I would be taking up on Sunday.

16   I understand Mr. Hall's argument that the issues

17   about the Government's justification for the order overlap,

18   but the immediate issue before me, as I see it, is whether

19   September 27th, whether Paragraph 1 should be permitted to

20   take effect or should be enjoined.

21   So I think everyone knows my views of the two

22   options here.  What I would like, I would like the

23   Government to confer with its clients and to get back to the

24   Court -- I'll ask you, Mr. Schwei, in a second, what a

25   reasonable time is -- to get back to the Court with respect

1    to those two options the Government prefers, after

2    consultation with your client.

3              Mr. Schwei, how long do you need to consult?

4              MR. SCHWEI:  Your Honor, I appreciate the

5    flexibility of the proposal and giving the Government a

6    choice.  I think trying to be realistic, this does involve

7    an Executive Order from the President and prohibited

8    transactions identified by the Secretary.  I suspect we need

9    a significant amount of time to confer and make that

10   decision.

11             To the extent that Your Honor would be willing to

12   permit us until the filing deadline tomorrow to essentially

13   either file something, say it will be postponed or here is

14   our opposition, I would certainly appreciate that; but

15   alternatively, I would ask until the end of the day today,

16   meaning 11:59 p.m. tonight, if Your Honor would permit that

17   alternatively.

18             THE COURT:  Mr. Hall, you obviously heard where I

19   am.  You would not be filing anything before 2:30 p.m.

20   tomorrow.  I understand you might be doing work between now

21   and then, but in light of the likely senior officials who

22   might need to be consulted on this, the issues at play and

23   the like, what is your view of Mr. Schwei's request that

24   2:30 p.m. tomorrow be the time on which either they file

25   their opposition or they inform the Court and you that the

1    operative date for Paragraph 1 has been pushed off such that

2    there can be a less-expedited briefing schedule?

3              MR. HALL:  Your Honor, I don't believe that we

4    have any objection to the hearing tomorrow at 2:30.  I mean,

5    we will either receive an opposition -- as I understand it

6    we will either receive an opposition to our preliminary

7    injunction motion or the Commerce Department will withdraw

8    or postpone the Sunday night deadline.

9              It obviously causes us some inconvenience between

10   now and the time it is filed, but we are not filing anything

11   else between now and 2:30 tomorrow.  Plaintiffs don't have

12   any objection to what you have proposed.

13             THE COURT:  So I think that that's how we will

14   proceed.

15             Mr. Schwei, on or before 2:30 p.m. tomorrow,

16   September 25, the Government will either file its opposition

17   to make Plaintiff's motion -- and again, the opposition can

18   say what it needs to say, but I do think I will be focused,

19   to the extent that you are opposing filing opposition, I

20   will be focused on the question of Paragraph 1 for the

21   reasons I articulated before.  So the Government will either

22   file an opposition on or before 2:30 p.m. tomorrow or it

23   will inform the Court and TikTok, the Plaintiffs, that

24   Paragraph 1 deadline has been extended.

25             If that's the path, you will let us know what the

1    new deadline is.  If that's the path you take and there is a

2    new deadline, I would ask that the Government make its

3    proposal at that point for how the briefing would proceed in

4    light of that new deadline, which again, if that new

5    deadline is not November 12th, I guess I'd leave it to you

6    to propose in the first instance if the deadline was far

7    enough out if it makes sense to just consider the entire

8    motion or if the deadline is only extended a little bit,

9    whether it makes sense to consider only the question of

10   Paragraph 1.  But for present purposes, I think we have a

11   way forward, and we will hear from the Government no later

12   than 2:30 p.m. tomorrow.

13          If the Government is not spending the effective

14   time and date of Paragraph 1, then Plaintiff's reply brief

15   in support of its motion shall be due at 2:30 p.m. on

16   September 26th.  And I will hold a telephonic hearing the

17   morning of September 27th at an exact time to be determined.

18   I suspect, as I said before, it would be at 9:30 or 10:00.

19   That's how I would like to proceed.

20          Any clarifications or questions from counsel?

21          Mr. Schwei, I will start with you since you now

22   have to go confer and you will be doing something 28 hours

23   from now.

24          MR. SCHWEI:  Thank you, Your Honor, for giving us

25   until that time and I think what you have outlined is

1    understood and I will take that back and confer with my

2    colleagues and report back to the Court and to the

3    Plaintiffs no later than 2:30, but obviously cognizant of

4    the work involved by everyone.  So to the extent that I have

5    an answer sooner, I will certainly report sooner.  I

6    appreciate it and understand the path forward.

7            THE COURT:  Thank you for that.  Yes, I was going

8    to add that but, of course, if you have an answer earlier,

9    even if it is just the path that you want to take, please

10   let us know.

11           Mr. Hall, any questions or clarifications that you

12   need?

13           MR. HALL:  Your Honor, I am just wondering

14   whether, in the event the Commerce Department extends the

15   Sunday deadline and therefore there is no opposition filed

16   at 2:30 and instead they are making a proposal about a

17   briefing schedule, do you want the parties to confer among

18   themselves about that briefing schedule before something is

19   presented to the Court or is it your preference to just have

20   the Government offer their proposal and then allow the

21   Plaintiffs to respond to it with Your Honor?

22           THE COURT:  I appreciate you raising that,

23   Mr. Hall.  It would be my preference to confer in the first

24   instance.  This may be fast-moving and I don't want that to

25   delay things.

1          With that clarification, I think what we are

2     really doing is the Government decides by 2:30 p.m. which

3     path it's taking.  If it is filing something, it files it,

4     and we have a schedule.

5          If the decision is to extend the effective date of

6     Paragraph 1, then I would like to be informed of that, as

7     the Plaintiffs should be.  But then assuming that there is a

8     new effective date, I would in the first instance like the

9     parties to confer about a new schedule, and if you can reach

10    agreement to propose it to me; and if you can't reach

11    agreement, to propose the competing views so that I can

12    decide which makes the most sense.

13         I don't want to set a deadline for that because

14    it's going to be dependent on what the Government.  Again,

15    this is all assuming that there is a decision to pick an

16    effective date.  And I am not assuming that is going to be

17    case.  This is all hypothetical.

18         I don't want to set a deadline for when I'd like

19    to see the results of that meet and confer, because I think

20    it's going to be dependent on how fast or quickly we need to

21    move.  I think it is a good suggestion, Mr. Hall, if that's

22    our path, that the parties confer in the first instance and

23    come to the Court either with a joint proposal or with

24    competing proposals that I can decide between.

25         MR. HALL:  Very good.

1          For our part, Your Honor, as soon as the

2    Government makes a decision on this and is prepared to

3    inform the Court, we will be available to discuss with

4    Government counsel any new schedule.

5          THE COURT:  Thank you, Mr. Hall.

6          Mr. Schwei, anything else we should discuss this

7    morning?

8          MR. SCHWEI:  Just to make sure I understand, Your

9    Honor.  So in essence the Government, tomorrow by 2:30, will

10   file a notice for its opposition.  And if the Government

11   elects to postpone the effective date, it should so inform

12   the Court and the Plaintiffs in a filing, but then

13   separately and shortly thereafter meet and confer and then

14   the parties can prepare a joint submission either presenting

15   a proposed joint schedule or their separate competing

16   proposals in a separate filing but obviously following soon

17   afterwards.

18         I just wanted to make sure that I understand that

19   correctly in terms of how it should operate mechanically if

20   that is the path.

21         THE COURT:  Yes.  I think that is the cleanest way

22   to do it mechanically.  I do think a notice, rather than

23   just an informal email or call to chambers, if you are

24   postponing the effective date, a filed notice is, I think,

25   better and more formal and then you have it exactly right

1    with respect to what happened after the filing of such a

2    notice, assuming, hypothetically, that we are in that world.

3              MR. SCHWEI:  Understood.

4              MR. HALL:  Your Honor, may I just offer one other

5    suggestion, which is in the event as we say the Commerce

6    Department chooses to withdraw the Sunday night date and we

7    are talking about a new schedule, what I do think would be

8    important is given that tomorrow is a Friday and this is

9    happening on a Friday afternoon that there would be clarity

10   around the schedule going forward before we hit the weekend.

11             So while we will make ourselves available for any

12   meet and confer, from our perspective, what we would most

13   appreciate is knowing tomorrow afternoon what that schedule

14   is going to look like.  Especially, if it remains expedited.

15             THE COURT:  I think that that is a very reasonable

16   request and it is what I would like to have happen.  The

17   only reason I don't want to absolutely set in stone that it

18   must happen by 6:00 p.m. tomorrow night or something is I

19   can imagine a world in which the meet and confer discussions

20   are being fruitful or where the Government has extended the

21   Paragraph 1 deadline out long enough that we are out from

22   under any extreme time pressure.

23             So I don't want to require a status report by 5:00

24   p.m. tomorrow, but I would very much encourage for the very

25   reasons you stated for the parties to do their level best to

1    talk after 2:30.  Again, this is assuming we are taking this

2    path and get something to me, frankly, any time tomorrow and

3    we will figure this out tomorrow night and get on the phone

4    with the parties, if necessary.

5              MR. HALL:  Thank you, Your Honor.

6              THE COURT:  Thank you.

7              Thank you, Counsel.  Any other issues we should

8    discuss this morning, Counsel?

9              MR. HALL:  I don't believe so, Judge.

10             MR. SCHWEI:  None from the Government, Your Honor.

11             THE COURT:  Thank you for your time this morning.

12   We will wait to hear from the Government either at 2:30 or

13   with any luck before 2:30 tomorrow.  I look forward to

14   hearing from you.

15             MR. HALL:  Thank you, Your Honor.

16             THE COURT:  Good-bye.

17             MR. SCHWEI:  Thank you.

18             (Proceedings concluded at 10:55 a.m.)

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court**

4    **Reporter,** certify that the foregoing is a true and correct

5    transcript of the record of proceedings in the

6    above-entitled matter.

7

8              **Please Note:**  This hearing occurred during

9    the COVID-19 pandemic and is therefore subject to the

10   technological limitations of court reporting remotely.

11

12

13

14

15   _____          **___/s/_____**
16           **DATE**                        **Lorraine T. Herman**

17

18

19

20

21

22

23

24

25