**CASE NO. 20-cv-2658(CJN)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

**TIKTOK INC. et al.**

**Plaintiffs,**

**v.**

**DONALD J. TRUMP et al**

**In His Official Capacity As President of the United States**

**Defendants,**

_____

**Brief of Amicus Curiae Jeffrey A. Lovitky In Support Of Plaintiffs**
_____

**JEFFREY A. LOVITKY**
**Attorney at Law**
**1776 K. Street, N.W., Suite 800**
**Washington, D.C. 20006**
**T: (202) 429-3393**
**F: (202) 318-4013**
**Email: jefflovitky@gmail.com**
**D.C. Bar No. 404834**

TABLE OF CONTENTS

STATEMENT OF INTEREST....................................................................................1

SUMMARY OF ARGUMENT.................................................................................2

FACTUAL BACKGROUND....................................................................................3

ARGUMENT...........................................................................................................5

I.      THE EXECUTIVE ORDER DATED AUGUST 6, 2020 AND THE
COMMERCE IMPLEMENTATION VIOLATE THE FIRST AMENDMENT....................5

(a)      The Orders Affect A Constitutional Interest of Amicus And Other TikTok Users..... 5

(b)      The Orders Should Be Reviewed Under The Strict Scrutiny Standard......................6

(c)      The Orders Cannot Survive Strict Scrutiny.................................................................9

(i)      The Orders Do Not Serve A Compelling Governmental Interest...............................9

(ii)      The Orders Are Not Narrowly Tailored....................................................................10

(d)      The Orders Do Not Survive An Intermediate Level Of Scrutiny..............................11

(i)      The Orders Do Not Satisfy An Important Governmental Interest And Are
Related To The Suppression Of Free Expression.........................................................12

(ii)      The Incidental Restrictions On Alleged First Amendment Freedoms Are Greater
Than Essential To The Furtherance Of Any Governmental Interest..........................13

II.      THE PROVISIONS OF 50 U.S.C. § 4565 ARE FACIALLY INVALID
UNDER THE FIRST AMENDMENT DUE TO THEIR CHILLING EFFECT ON
PROTECTED SPEECH.........................................................................................................14

CONCLUSION.....................................................................................................................16

TABLE OF AUTHORITIES

<u>Cases</u>

*Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988)...........................9

*Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 124 S. Ct. 2783,
   159 L. Ed. 2d 690 (2004) ...................................................................11

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)..............9

*Boardley v. U.S. Dep't of Interior*, 615 F.3d 508 (D.C. Cir. 2010).............................12

*Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 119 S. Ct. 636,
   142 L. Ed. 2d 599 (1999).................................................................7

*City of Chicago v. Morales*, 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).............15,16

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 108 S. Ct. 2138,
   100 L. Ed. 2d 771 (1988)...................................................................15

*Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)...........................7

*Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*,
   447 U.S. 530, 100 S. Ct. 2326, 65 L. Ed. 2d 319 (1980)........................................10

*Edenfield v. Fane*, 507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993)............................12

*Edwards v. D.C.*, 755 F.3d 996 (D.C. Cir. 2014)...................................................10,12

*Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 109 S. Ct. 1013,
   103 L. Ed. 2d 271 (1989)....................................................................7,9

*First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 98 S. Ct. 1407,
   55 L. Ed. 2d 707 (1978)....................................................................9,13

*Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173,
   119 S.Ct. 1923, 144 L.Ed.2d 161 (1999)........................................................9

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123,  71 S. Ct. 624,
   95 L. Ed. 817 (1951)..........................................................................13

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334,  115 S. Ct. 1511,
   131 L. Ed. 2d 426 (1995).......................................................................7

*Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009)........................................9

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976)...............8

*Packingham v. North Carolina*, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017).........................5,6

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296 (D.C. Cir. 2014)..........................15

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015)............8

*Reno v. ACLU*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)......................................12

*Sandvig v. Sessions*, 315 F. Supp. 3d 1 (D.D.C. 2018)................................................5

*Sorrell v. IMS Health Inc.*, 564 U.S. 552, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011)..................8

*Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239,
   43 L.Ed.2d 448 (1975)..........................................................................8

*Tiktok Inc., v. Trump*, No. 1:20-CV-02658 (CJN), 2020 WL 5763634
   (D.D.C. Sept. 27, 2020)........................................................................4

*Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 117 S. Ct. 1174,
137 L. Ed. 2d 369 (1997)..........................................................................13

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 120 S.Ct. 1878,
   146 L.Ed.2d 865 (2000).........................................................................9

*Virginia v. Hicks*, 539 U.S. 113, 119, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003)....................2,16

*Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)...........8,11

Statutes

50 U.S.C. § 1601.................................................................................................................3
50 U.S.C. § 1701.................................................................................................................3
50 U.S.C. § 4565.......................................................................................................14,15,16
50 U.S.C. § 4565(a)(4)(D)(i)..........................................................................................14,15
50 U.S.C. § 4565(e)...........................................................................................................15
50 U.S.C. § 4565(f)(11)..................................................................................................14,16

Other Authorities

*A Tale Of Two Statutes: Using IEEPA's Accountability Safeguards To Inspire CFIUS Reform*,
E. Maddy Berg, Columbia Law Review, Vol. 118, No. 6, 2018...................................................15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ ) | |
| TIKTOK INC., BYTEDANCE LTD ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| v. ) Civil Action No. 20-cv-2658(CJN) | |
| ) | |
| ) | |
| DONALD J. TRUMP, ) | |
| in his official capacity as ) | |
| President of the United States ) | |
| ) | |
| WILBUR L. ROSS JR. ) | |
| In his official capacity as ) | |
| Secretary of Commerce ) | |
| ) | |
| Defendants ) | |
| _____) | |

**BRIEF OF AMICUS CURIAE JEFFREY A. LOVITKY IN SUPPORT OF PLAINTIFFS**

STATEMENT OF INTEREST

Amicus is an attorney licensed to practice in Florida, Connecticut, as well as the District of Columbia, and is a member of the Bar of the United States District Court for the District of Columbia, as well as the United States Court of Appeals for the D.C. Circuit. Amicus uses TikTok content as a source of information for the purpose of forming opinions on matters such as the BlackLivesMatter movement, the government's handling of the Covid-19 pandemic, climate change, as well as evaluating the performance of public officials and candidates for public office. Amicus also uses TikTok for the purpose of disseminating messages concerning matters of political concern. For example, on September 9, 2020, Amicus posted a video on TikTok urging users to protest against the President's Executive Order dated August 6, 2020.

As required by LCvR 7(o)(5), Amicus certifies that the foregoing brief was authored solely by himself. Further, no party or a party's counsel contributed money that was intended to fund the preparation or submission of this brief; and no person other than Amicus contributed money that was intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The Executive Order dated August 6, 2020 and the Commerce Implementation dated September 18, 2020 curtails core political speech on the part of users of the TikTok platform. Additionally, the Executive Order dated August 6, 2020 and the Commerce Implementation are not content neutral in that they seek to censor content on TikTok that is favorable to the Peoples Republic of China. Accordingly, the Court should apply strict scrutiny in determining whether these orders violate the First Amendment.  As will be shown below, the Executive Order dated August 6, 2020 and the Commerce Implementation cannot survive judicial review when applying the strict scrutiny standard. Nor can these orders survive judicial review even when applying an intermediate level of scrutiny.

The President's divestment order dated August 14, 2020 was based on his authority under 50 U.S.C. § 4565 to order the divestment of any foreign interests for any reason he "*determines to be appropriate",* including as in the instant case displeasure with the content of TikTok. Few social or news media companies would risk engaging in speech which the President finds to be objectionable, when faced with the threat of a government mandated divestment. As such, facial invalidation of the President's authority to order divestment is warranted, because "*enforcement of an overbroad law may deter or chill constitutionally protected speech." Virginia v. Hicks*, 539 U.S. 113, 119, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003).

FACTUAL BACKGROUND

On August 6, 2020, President Donald Trump issued an Executive Order prohibiting "*any transaction by any person, or with respect to any property, subject to the jurisdiction of the United States, with ByteDance Ltd. (a.k.a. Zìjié Tiàodòng), Beijing, China, or its subsidiaries, in which any such company has any interest, as identified by the Secretary of Commerce (Secretary) under section 1(c) of this order*." TikTok is a subsidiary corporation of ByteDance.

The President found that ByteDance and TikTok constituted threats to the "*national security*" of the United States. Pursuant to the terms of the Executive Order, the Secretary of Commerce was directed within 45 days to identify the transactions that are subject to the prohibition. The Executive Order was issued pursuant to the authority contained in the International Emergency Economic Powers Act (50 U.S.C. § 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. § 1601 et seq.), and section 301 of title 3, United States Code.

A critical factor on which the President's national security determination was based was the content of the TikTok platform. The President stated that TikTok: "*reportedly censors content that the Chinese Communist Party deems politically sensitive, such as content concerning protests in Hong Kong and China's treatment of Uyghurs and other Muslim minorities. This mobile application may also be used for disinformation campaigns that benefit the Chinese Communist Party, such as when TikTok videos spread debunked conspiracy theories about the origins of the 2019 Novel Coronavirus*."

Other reasons are also given for the prohibition. According to the Executive Order, the data collection practices of TikTok "*automatically captures vast swaths of information from its users. This data collection threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information*." These data collection practices "*potentially*

3

[allow] *China to track the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage.*"

On August 14, 2020, the President also issued a separate Executive Order pertaining to TikTok. Pursuant to the terms of that Executive Order, ByteDance, as well as their affiliates and subsidiaries, were directed to divest their ownership interests in TikTok's United States operations. The stated rationale for the August 14, 2020 Executive Order is that ByteDance "*might take action that threatens to impair the national security of the United States.*" The divestment required by the August 14, 2020 Executive Order was based on the same factors stated in support the Order dated August 6, 2020. *See TikTok v. Trump*, Case No. 1:20-cv-02658, Commerce Decision Mem. at p. 22, ECF No. 22-1.

On September 18, 2020, the Secretary of Commerce defined the transactions subject to the prohibitions of the Executive Order. Pursuant to the Secretary's definition of prohibited transactions, maintenance updates and downloads of TikTok by new users would be prohibited as of September 27, 2020. The Commerce Implementation further requires the effective shut-down of TikTok in the United States as of November 12, 2020. The Executive Order dated August 6, 2020 and the Commerce Implementation dated September 18, 2020 are hereinafter collectively referred to as the "Orders".

On September 27, 2020, the United States District Court for the District of Columbia enjoined the Secretary of Commerce from further implementation of the September 27, 2020 deadline. *See Tiktok Inc., v. Trump,* No. 1:20-CV-02658 (CJN), 2020 WL 5763634 (D.D.C. Sept. 27, 2020). However, the district court declined to grant TikTok's motion for injunctive relief in connection with the deadline of November 12, 2020.

ARGUMENT

I.      THE EXECUTIVE ORDER DATED AUGUST 6, 2020 AND THE COMMERCE
IMPLEMENTATION VIOLATE THE FIRST AMENDMENT

(a)  The Orders Affect A Constitutional Interest of Amicus And Other TikTok Users

In *Packingham v. North Carolina*, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017), the

Supreme Court held that use of social media constitutes protected speech under the First

Amendment. In *Packingham*, the Court ruled that a North Carolina law that precluded felons

convicted of sexual abuse from accessing social media violated the First Amendment. In

reaching its decision, the Court confronted the threshold question of whether social media is a

public forum which is subject to First Amendment protection. The Court answered in the

affirmative, noting that cyberspace, and "*social media in particular*" is the most important place

in the modern world for the exchange of views. Id. at 1735. The Court noted that the North

Carolina law "*bars access to what for many are the principal sources for knowing current*

*events, checking ads for employment, speaking and listening in the modern public square, and*

*otherwise exploring the vast realms of human thought and knowledge.*" Id. at 1737. The Supreme

Court ruled that the Internet and social media "*are the 21st century equivalent of public streets*

*and parks.*"  Id. at 1743.

A recent case from the D.C. Circuit further reinforces *Packingham*.  In *Sandvig v.*

*Sessions*, 315 F. Supp. 3d 1 (D.D.C. 2018), the issue was whether the Computer Fraud and

Abuse Act (CFAA), which prohibited use of a computer connected to the Internet for the purpose

of accessing another computer without authorization, violated the First Amendment. The suit

was brought by four professors and a media company who intended to obtain data from various

websites for the purpose of determining whether those websites use tracking tools for the

purpose of racial and socio-economic profiling.  The technique to be used by the plaintiffs would violate the CFAA, because it would exceed the terms of service imposed by the websites being examined.  The plaintiffs intended to bring the results of their study to the attention of the public, through dissemination in the news media. Applying *Packingham*, the court held that privately owned websites are public forums which enjoy "*special status*" and "*special First Amendment protection*." 315 F. Supp. 3d at 12.

In sum, government regulation of private social media is subject to First Amendment scrutiny. TikTok is a public forum, intended largely for the receipt and dissemination of information.  This social media application is therefore entitled to "*special protection*" under the First Amendment, both because it is widely used and further because it is used for purposes of expressive communication.

    (b) <u>The Orders Should Be Reviewed Under The Strict Scrutiny Standard</u>

The Orders should receive strict scrutiny because they will curtail the ability of Amicus and other TikTok users to receive and disseminate core political speech.  Amicus uses TikTok content as a source of information for the purpose of forming his opinions on matters such as the BlackLivesMatter movement, the government's handling of the Covid-19 pandemic, climate change, and evaluation of public officials and candidates for public office. Amicus also uses TikTok for the purpose of disseminating messages concerning matters of political concern. For example, on September 9, 2020, Amicus posted a video on TikTok urging users to protest against the President's Executive Order dated August 6, 2020.

The purposes for which Amicus uses TikTok videos is by no means uncommon. For example, #ripjohnlewis has been accessed 7.4 million times, to commemorate the life of former Congressman John Lewis. A forum on TikTok dedicated to the BlackLivesMatter movement has

been accessed 21.2 billion times. https://www.tiktok.com/tag/BlackLivesMatter?lang=en.  A search under the category #politics reflects 3.9 billion views on TikTok.  A search under #biden2020 has 2.5 billion views.

TikTok further offers a 2020 Elections Guide, which contains links for voter registration websites, as well as information on voting by mail, finding your polling place, ID requirements, as well as who is on the ballot.  TikTok also offers resources for overseas and military voters, voting as a student, voting as a person with disabilities, and voters with past convictions.

As noted in *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), *"[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection*."  The speech restrictions imposed by the Orders affect "*core political speech,*" which is defined as "*communication concerning political change.*" *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999). The First Amendment "*has its fullest and most urgent application to speech uttered during a campaign for political office." Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S. Ct. 1013, 103 L. Ed. 2d 271 (1989).

Courts apply "*strict scrutiny*" to restrictions on core political speech. *See Buckley*, 525 U.S. at 207 (Thomas J. concurring).  Compare *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995) (courts apply "*exacting scrutiny*" to limitations on core political speech, which may be restricted "*only if it is narrowly tailored to serve an overriding state interest*.").  Accordingly, the Court should apply heightened scrutiny in reviewing the Orders because of their burden on core political speech.

A second reason for applying strict scrutiny is that the prohibitions contained in the Orders are directly related to the content of TikTok. Content based restrictions on speech are

subject to analysis under the strict scrutiny standard of review. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163-64, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). Such restrictions are "*presumptively invalid.*" *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011).  The "*principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.*" *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

The rationale for the Orders is based largely on the content of the information contained in TikTok.  This is clear from the language of the Executive Order dated August 6, 2020.  The Orders are based on a finding that the Chinese government "*reportedly*" censors TikTok for the purpose of depriving a forum to individuals opposed to the Chinese Communist Party ( "CCP"). The Orders are also based on a finding that TikTok may be used to spread disinformation, as well as a "*more positive view of China globally.*" *See* Department of Commerce Memorandum (hereinafter "Commerce Memorandum") at p. 20, ECF 22-1. These are clearly content based criteria.

 A third reason for applying strict scrutiny is that the Orders constitute a prior restraint. A prior restraint is a law giving "*public officials the power to deny the use of a forum in advance of actual expression.*" *Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The Orders constitute a prior restraint because they effectively prohibit the receipt or dissemination of information on TikTok as of November 12, 2020.  The First Amendment provides "*greater protection against prior restraints than it does against subsequent punishment for a particular speech.*" *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 589, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).  It is well established that prior restraints bear a

"*heavy presumption against [their] constitutional validity*."   *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). The prior restraint in this case is particularly severe, because TikTok is a medium for the dissemination of newsworthy information. *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608-09 (2d Cir. 1988).

(c)   The Orders Cannot Survive Strict Scrutiny

Strict scrutiny requires a showing that a restriction is "*narrowly tailored to promote a compelling Government interest*." *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). To satisfy strict scrutiny, the government must establish: (1) "*the interests the government proffers in suppor*t" of the statute must be "*properly characterized as compelling;"* (2) the statute must "*effectively advance[ ] those interests*"; and (3) the statute must be "*narrowly tailored to advance the compelling interests asserted.*"   *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 11 (D.C. Cir. 2009).

(i)   The Orders Do Not Serve A Compelling Governmental Interest

The Government bears the burden of proving that any restrictions on speech are constitutional. *Greater New Orleans Broadcasting Assn., Inc. v. United States,* 527 U.S. 173, 183, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999). The governmental interests asserted in this case hardly satisfy any governmental interest, let alone a compelling one.  The rationale for the Orders is that the Chinese Communist Party censors TikTok and uses it for the purpose of spreading disinformation.  However, "*the people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments*." *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 791 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978). *See also Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 109 S. Ct. 1013, 103 L. Ed. 2d 271 (1989) ("*A highly paternalistic approach limiting what people may hear is generally*

*suspect*.").  Thus, censorship of TikTok by China or its use for purposes of disinformation cannot constitute a compelling or even an important government interest.

Further, "[*m]ere speculation of harm does not constitute a compelling state interest*." *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 543, 100 S. Ct. 2326, 65 L. Ed. 2d 319 (1980). *See also Edwards v. D.C.*, 755 F.3d 996, 1003 (D.C. Cir. 2014). Defendants have not identified a single verified instance in which TikTok has used any data it collects for the purpose of harming any individual in the United States. There is no finding in the Orders that TikTok has even once been used in a manner which has harmed the national security of the United States.  The Commerce Memorandum containing the justification for the Orders is based largely on unverified allegations and unsubstantiated press reports. See Commerce Mem., ECF 22-1.

Indeed, the language of the Executive Order dated August 6, 2020 demonstrates that it is based entirely on <u>speculative</u> or <u>potential</u> harms. The Executive Order states that TikTok:

> *data collection threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information —* <u>*potentially*</u> *allowing China to track the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage.*

> <u>*reportedly*</u> *censors content that the Chinese Communist Party deems politically sensitive, such as content concerning protests in Hong Kong and China's treatment of Uyghurs and other Muslim minorities.*

> <u>*may*</u> *also be used for disinformation campaigns that benefit the Chinese Communist Party, such as when TikTok videos spread debunked conspiracy theories about the origins of the 2019 Novel Coronavirus.*

(ii)     <u>The Orders Are Not Narrowly Tailored.</u>

The prohibitions imposed by the Orders are not narrowly tailored.  The Executive Order states three circumstances in which TikTok's automated data collection policies could be used to damage national security: (a) building dossiers for blackmail, (b) tracking U.S. government

employees and federal contractors and (c) conducting corporate espionage. Approximately 70% of TikTok users are between the ages of 16-24. *See* Commerce Memorandum at p. 4. It is respectfully submitted that the numbers of TikTok users who are federal employees, federal contractors, or likely targets for corporate espionage or blackmail, constitute an infinitesimal subset of the total TikTok user community. As such, the Orders burden far more speech than is necessary to serve any compelling governmental interest.

The Orders could have been tailored to address the security issues presented by this small subset of the TikTok user community. Alternatively, the government could have ordered TikTok to restrict the data which it collects, with strict government oversight of compliance with such order. Instead, the government seeks to prevent 100 million users of TikTok in the United States from using that application. The government has not demonstrated that a shutdown of TikTok is the "*least restrictive"* means of achieving its objectives. *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004).

(d) <u>The Orders Do Not Survive An Intermediate Level Of Scrutiny</u>

Content neutral time, place, or manner regulations of protected speech may survive intermediate scrutiny, provided "*they are narrowly tailored to serve a significant governmental interest, and [l]eave open ample alternative channels for communication of the information*." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The Orders do not satisfy this test because they do not leave open alternative channels of communication.

The content of TikTok is specific to that application and is unavailable in any other forum. Absent TikTok, Amicus and other members of the public will be unable to access a unique source of information on public issues of significant importance.

In *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508 (D.C. Cir. 2010), the Court rejected a defense to a restriction imposed upon the distribution of pamphlets in a national park on the grounds that there were alternative places nearby in which such pamphleteering could occur. The Court stated that *"[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.*") (quoting *Reno v. ACLU*, 521 U.S. 844, 880, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)). Likewise, the Orders in this case cannot be defended on the basis that the First Amendment rights of TikTok users can be exercised in some forum other than TikTok.

The Orders also do not satisfy the other criteria for satisfying the intermediate level of scrutiny. Pursuant to *Edwards v. D.C.*, 755 F.3d 996, 1001-02 (D.C. Cir. 2014), a restriction survives intermediate scrutiny if (1) *"it is within the constitutional power of the Government;" (2) "it furthers an important governmental interest;" (3) "the governmental interest is unrelated to the suppression of free expression;" and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.*"  As noted in *Edenfield v. Fane*, 507 U.S. 761, 770-71, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993), "[t]his burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial  speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."

    (i)  <u>The Orders Do Not Satisfy An Important Governmental Interest And Are Related To The Suppression Of Free Expression</u>

As noted above, the Orders are based almost entirely on speculative considerations. In addition, a "*critical*" reason for the prohibitions is the government's concern that TikTok could be used to promote "*a more positive view of China globally*." Commerce Memorandum at p. 20. Even if true, government censorship of TikTok based upon disagreement with the political views

expressed on that platform does not constitute an important governmental interest. To the

contrary, government action of this nature "*smacks of a most evil type of censorship.*" *Joint Anti-*

*Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143,  71 S. Ct. 624, 95 L. Ed. 817 (1951)

(Black J. concurring).

Another reason for the Executive Order is that TikTok could be used to spread

disinformation pertaining to the Coronavirus. This rationale is inadequate, because "*the people in*

*our democracy are entrusted with the responsibility for judging and evaluating the relative*

*merits of conflicting arguments.*" *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 791 98 S. Ct.

1407, 55 L. Ed. 2d 707 (1978).

> (ii) <u>The Incidental Restriction On Alleged First Amendment Freedoms Is Greater<br>Than Is Essential To The Furtherance Of Any Governmental Interest</u>

Under intermediate scrutiny, a restriction may not "*burden substantially more speech*

*than is necessary*" for the purpose of achieving the government's interest. *Turner Broad. Sys.,*

*Inc. v. F.C.C.*, 520 U.S. 180, 213-14, 117 S. Ct. 1174, 137 L. Ed. 2d 369 (1997).  The restrictions

on TikTok preclude substantially more speech than is necessary to advance any interest of the

government.

As noted above, a shutdown of TikTok burdens the speech of nearly 100 million users of

that application in the United States. The vast majority of TikTok users are persons whose

utilization of the application cannot possibly implicate any national security concerns.

Defendants had available many less draconian alternatives to deal with any potential national

security threats. The Orders burden far more speech than is conceivably necessary to satisfy any

legitimate national security concerns.

II. THE PROVISIONS OF 50 U.S.C. § 4565 ARE FACIALLY INVALID UNDER THE FIRST AMENDMENT DUE TO THEIR CHILLING EFFECT ON PROTECTED SPEECH

On August 14, 2020, the President issued an Executive Order prohibiting any transaction in which ByteDance Ltd. of Beijing, China acquired any interest in TikTok. Pursuant to the terms of that Executive Order, ByteDance was directed within ninety days to divest its ownership interests in TikTok's United States operations. The stated rationale for the August 14, 2020 Executive Order is that ByteDance "*might take action that threatens to impair the national security of the United States.*"

This divestment order was issued under the authority of 50 U.S.C. § 4565, pursuant to which the Committee on Foreign Investment in the United States (CFIUS) reviews transactions with foreign persons for possible national security implications. Among the transactions covered by the CFIUS process are transactions in which a foreign person has involvement "*in substantive decisionmaking of the United States business regarding-- the use, development, acquisition, safekeeping, or release of sensitive personal data of United States citizens maintained or collected by the United States business.*" 50 U.S.C. § 4565(a)(4)(D)(i). In the instant case, the CFIUS identified unmitigated national security risks arising from the transaction pursuant to which ByteDance acquired the U.S. operations of TikTok. *See TikTok v. Trump*, Case No. 20-cv-2658, Compl. ¶ 46, ECF No. 1.

The President has virtually unlimited discretion in determining whether to order divestment for national security reasons pursuant to 50 U.S.C. § 4565(f)(11). The statute provides that the President may consider <u>any</u> factors he "*<u>determines to be appropriate</u>*" in deciding whether to mandate divestment. *Id*. In addition, the statute precludes judicial review of

14

the President's national security determinations. 50 U.S.C. § 4565(e)[1]. CFIUS has been aptly

described as a "*black box*" licensing scheme. *See* E. Maddy Berg, *A Tale Of Two Statutes: Using*

*IEEPA's Accountability Safeguards To Inspire CFIUS Reform*, Columbia Law Review, Vol.

118, No. 6, 2018.

There is little doubt that 50 U.S.C. § 4565 has broad applicability to a variety of

industries.  As noted above, the statute covers transactions with foreign persons involving "*the*

*use, development, acquisition, safekeeping, or release of sensitive personal data of United States*

*citizens."*  50 U.S.C. § 4565(a)(4)(D)(i).  Virtually every news organization, social media site, or

other type of commercial media company maintains sensitive personal data of their

users/subscribers. Indeed, the Commerce Memorandum recognizes that the subscriber

information maintained by TikTok is no different from that maintained by any other social media

site. Commerce Memorandum at p. 14.

A statute which gives the President <u>unlimited discretion</u> to mandate the restructuring of

an entity whose principal business is the expression of speech is precisely the type of licensing

regime that is objectionable under the First Amendment. *City of Lakewood v. Plain Dealer Pub.*

*Co.*, 486 U.S. 750, 757, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1988) ("*in the area of free*

*expression a licensing statute placing unbridled discretion in the hands of a government official*

*or agency constitutes a prior restraint and may result in censorship*.").

Under the overbreadth doctrine, facial invalidation of a statute is appropriate if the law is

"*impermissibly vague because it fails to establish standards for the police and public that are*

*sufficient to guard against the arbitrary deprivation of liberty interests*." *City of Chicago v.*

---

[1] Courts have held that this provision does not preclude judicial review of constitutional claims. *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 311-12 (D.C. Cir. 2014).

*Morales*, 527 U.S. 41, 52, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). The is precisely the situations presented by 50 U.S.C. § 4565, which allows the President to consider any factor he deems to be appropriate in deciding whether to order divestment. 50 U.S.C. § 4565(f)(11).

In the instant case, a "*critical*" reason for the August 14, 2020 Executive Order was the U.S. government's view that TikTok "*promotes content that ensures a more positive view of China globally*."  Commerce Memorandum at 20. The facts of this case clearly demonstrate the manner in which the President's divestment authority under § 4565 may be used for purposes of censorship, based on the President's dislike of the content expressed on such social media sites.

Few social or news media companies would risk engaging in speech which the President finds to be objectionable, when faced with the possibility of a government mandated divestment. Facial challenges are especially warranted when "*the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech." Virginia v. Hicks*, 539 U.S. 113, 119, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003).

This is precisely the situation faced by TikTok. The President's August 14, 2020 divestment order has been aptly described as a "*nationalization*" of TikTok.[2] The chilling effect emanating from the President's divestment order injures not only the First Amendment rights of TikTok, but also the First Amendment rights of users of TikTok who rely upon this application as a source of information pertaining to matters of significant public interest.

CONCLUSION

In conclusion, Amicus respectfully requests that the Court preliminarily and permanently enjoin further enforcement of the Executive Order dated August 6, 2020, the Commerce

---

[2] https://www.wsj.com/articles/tiktok-meets-the-meddling-feds-11601843585 (last accessed Oct. 8, 2020).

Implementation dated September 18, 2020, as well as the President's divestment order dated

August 14, 2020.

Respectfully Submitted,

/s/ Jeffrey A. Lovitky

_____

JEFFREY A. LOVITKY
Attorney at Law
1776 K Street, N.W., Ste. 800
Washington, D.C. 20006
Telephone: (202) 429-3393
Email: jefflovitky@gmail.com